JjGORBATY, Judge.
In this appeal, plaintiff-appellant, the child “D.P.,” contends that the trial court erred in denying the opposition of his father, T.S., to an adoption. For the reasons set forth below, we reverse and remand.

FACTS AND PROCEDURAL HISTORY

On July 19, 2001, D.P. was born at University Hospital. On that day, I.A.P., the child’s unwed mother, contacted Cynthia Wadsworth at Children’s Bureau of New Orleans, a private adoption agency licensed by the State of Louisiana, and requested that the child be placed for adoption. I.A.P. signed the necessary papers to place D.P. in the custody of Children’s Bureau on July 20, 2001, and the child was taken into Children’s Bureau’s custody on that date.
On September 5, 2001, I.A.P. executed an authentic Act of Surrender, surrendering the child for the purpose of adoption and identifying the child’s father as T.S. T.S. was, at the time of the execution of surrender and all times thereafter, an inmate at Dixon Correctional Center in Jackson, Louisiana. The Act of Surrender was filed with the Juvenile Court for the Parish of Orleans.
A Notice of Filing of Surrender was sent to T.S. on September 26, 2001. On October 4, 2001, T.S. sent a letter to the court advising that he opposed the | ^surrender of the child. The court received this letter on October 9, and a hearing was set for October 19, in accordance with the provisions of Children’s Code Article 1137(C). P.A., the mother of T.S., was notified of the hearing since T.S. was incarcerated, and there was insufficient time to arrange for him to be writted into court on that date. At that hearing, Ferdinand Valteau was appointed to represent the child. P.A., T.S.’s mother, was advised of the need to hire counsel to represent T.S. The father’s contest to the adoption was set for November 30, 2001.
At the hearing, T.S., who appeared without counsel, acknowledged that he was that father of D.P., and described the financial support he provided to I.A.P. during her pregnancy. He stated that while in prison, he had attempted to contact I.A.P. through his mother about the birth of their child. I.A.P. told his mother that the baby had died, but T.S. later learned through friends that she had put the baby up for adoption. He further testified that his mother, P.A., assisted by his sisters, would take care of the child for him until he was released from jail. Testimony was also heard from P.A., T.S.’s mother; A.A., his sister; L.S., his grandmother; and Cynthia Wadsworth from the Children’s Bureau of New Orleans. I.A.P., the mother of the child, was not present. T.S., acting as his own attorney, did not question any of the witnesses or introduce any further evidence.
At the conclusion of the hearing, the trial judge denied T.S.’s opposition. She stated:
[sThe parental rights of the father will be terminated. I find that the father is not fit; that of his four convictions, two of them are for distribution of drugs. The commitments say that it was at a school. He says it was at a playground. Both of these are equally reprehensible. He’s sentenced to fifteen years in jail; five years of which is without benefit of pardon, probation, parole, or suspension of sentence. So he will do a minimum of five years in jail to a maximum of fifteen *873 years in jail. This alone prevents him from parenting a child. Although we took testimony on his mother’s fitness, that is not really an issue, and the court feels that his plan of leaving the child with his mother until he gets out of jail is not adequate and in any event, I’m not sustaining the opposition.
D.P., the child, subsequently filed this appeal.

DISCUSSION

Appellant argues that the trial court did not rule in the best interest in the child when it terminated the father’s rights by finding him “not fit.”
Article 1138 of the Children’s Code provides:
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father’s substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C.The child, the mother of the child, and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article. However, the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child.
|4P. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
*****
In interpreting this article, the Louisiana Supreme Court opined:
In our opinion, this statutory framework affords the unwed father all of the process due him under the state and federal constitutions as explained by Lehr v. Robertson, [463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)]; In re B.G.S., [556 So.2d 545 (La.1990)]; and the other decisions discussed therein.This is an adoption case between private litigants, and under the circumstances herein the unwed father does not have a fully established protected right to a parental relationship with his child until he demonstrates his fitness and commitment according to the standards provided by law and our decisions. Due process guarantees him notice, hearing, and an adequate opportunity to make such a showing ....
In the Matter of R.E., 94-2657, 94-2696, 94-2663, p. 3 (La.11/9/94), 645 So.2d 205, 208 (emphasis added).
As was earlier noted, T.S. appeared at the hearing of this matter without counsel:
*874 Okay. [T.S.], was your mother able to hire private counsel for you? She said — the last time we were in court she said she was going to hire an attorney for you. Did she do that?
T.S.:
No, ma’am.
THE COURT:
Well, we can go forward today without an attorney. That’s not a problem. The only issue that is before the court today is your present and future commitment to the child; your fitness to raise the child yourself and your ability to assume parenting responsibilities. We’re going to go ahead. You’re going to have an opportunity to be heard. [P.A.], were you able to hire private counsel?
P.A.:
No, ma’am.
THE COURT:
Okay. Well, you can have a seat, and we can proceed.
1 KLater in the hearing, Mr. Valteau remarked, “Just note, Judge, that I object to proceeding without an attorney. I think this young man is overwhelmed by the procedure.” The court replied, “The law does not require that he have an attorney. His family was given an opportunity to hire one for him. There is no provision for appointment of counsel in a situation like this.”
The instant case concerns the serious issue of termination of parental rights. At the hearing, T.S., who was described as being “overwhelmed by the procedure,” was unrepresented by counsel. At no time did the trial judge ask T.S. if he desired an attorney or a continuance to retain one. She did not even inquire if his mother had informed him of the court’s October 19th advisement to hire an attorney. Instead, she merely asked if his mother had procured one for him.
From the record, it is clear that without an attorney, T.S., who is eighteen years old and has only a tenth grade education, was ill-equipped to carry his burden of proof and demonstrate his fitness and commitment to the child. As such, we find that he was deprived of his “adequate opportunity to make such a showing,” as described by the Louisiana Supreme Court in In the Matter of R.E., supra. Without the evidence and testimony that would no doubt be gleaned from such an “adequate opportunity,” we are unable to resolve appellant’s assignment of error and determine if the trial court’s decision was in the best interests of the child.

CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the trial court is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

McKAY, J., concurs.